Thank you, Your Honors, and may it please the Court, Sharon Swingle for the Department of Justice, representing the United States as amicus curiae this morning. I do want to thank the Court for allowing us to participate, and also the relator who has agreed to cede five minutes of their time to the government. We're here this morning because the United States has a significant interest in the construction that courts give to the standards that apply to False Claims Act claims. That's true not only because the United States is frequently a plaintiff in claims brought under the False Claims Act, but also because of the interest we have even where claims are brought by relators. And in the government's view, to apply an unduly stringent requirement to False Claims Act claims could cut off at the knees claims for fraud that would then become known to the government. And really, we looked to the False Claims Act as a critical means by which allegations of wrongdoing can come to light to allow the United States to investigate those claims, potentially to intervene, but even where the government chooses not to intervene, ultimately sometimes resulting in recovery to the Federal FISC. We participate as amicus today to make what I think is a very simple point, but a critical one. And it is simply that there is no per se requirement that a relator or the United States, as a plaintiff in a False Claims Act case, identify a specific claim for payment that is submitted to the United States for payment, or that is submitted to a third-party intermediary for payment, as a condition of surviving a motion to dismiss. I think as Judge Easterbrook recently recognized in the Lusby case, writing for a panel composed of himself, Judge Posner, and Judge Wood, requiring identification of specific claims for payment would take a big bite out of key TAM litigation, except in the very narrow circumstances in which a relator were perhaps employed in an accounting department at a corporate defendant. And I think that's particularly true in cases where the fraudulent scheme is alleged to result in submissions of claims by third parties, where even a corporate insider with extensive knowledge of a fraudulent scheme would not have access to the kind of detailed claims information that would seem to be required under the district court's standards. Kagan. It sounds good. Now the question is, what does it mean in practice? Because in your view, if all you allege is a potential scheme with no particularity as to how it's linked up to payment, would that be sufficient? Well, I don't think so, Your Honor. Certainly we accept that the fraudulent scheme must be pled with particularity. So do you agree that in effect the Rule 9 standards apply? That's correct, Your Honor. Okay. And we agree that there needs to be a sufficient factual basis in the allegations to draw the inference that there were false claims, at least for purposes of an A1 claim. Of course, there are different types of claims brought here, and not every claim under the False Claims Act requires evidence that a claim was actually submitted to the government for payment. Counsel, let me ask you whether you differentiate what I would call global false claims from specific false claims. And to go back to the example that I used in the previous argument, if a person was impersonating a physician and submitting Medicare claims, every claim they submit, every annual report, cost report or whatever they're called, would by definition be false. And so you're saying the alleged the particularity would have to be about that individual and the fact that they are not licensed. If the claim is that, you know, some office visits were charged for nonexistent people, presumably you'd have to identify who you're talking about, when that happened and so forth. I think that's right, Your Honor. And I think we point that out in our brief. I think there are different kinds of claims of fraud. And in some instances, the nature of the fraud really is tied to something specific about the claim itself, perhaps a claim for a particular treatment that wasn't actually provided, for example, or a person who simply didn't exist. How about medically unnecessary procedures? Is that tied to an individual? Well, I think it may depend, Your Honor. And I think, to give perhaps an analogy, the Walker case in the Eleventh Circuit, in which the claim was one of billing fraud, it was that actual claims submitted for payment used false billing codes to result in greater compensation to the practice. So in that sense, the scheme involved specific claims, something within the claim,  And the difference between that case and my example is that there you're really doing false billing for something that didn't happen, potentially here, the procedures are performed, but the allegation would be they're medically unnecessary. So it's they're superfluous procedures, and then, of course, you do get paid for them. Do you, in your view, what is the pleading requirement on that kind of a claim? Well, again, I do think you would need to plead with specificity what it was about the treatment that was medically unnecessary, you know, the who, what, when, where and how that this Court has identified. It may be that the scheme is relatively broad-based, however, and that in particular instances, you wouldn't need to point to specific details about a specific claim for payment to satisfy pleading requirements. Obviously you can't. But what about taking a different, because that's a fairly, that's more explicit, an explicit false claim. What about this so-called implied false claim that rests on the composition of the statutes that flow through ultimately to what's certified for payment? In your view, if you allege a statute to which basically you sign up if you're going to get payment, and then you allege that you're submitting claims that would make, but you're not in compliance with the statute, would you need to do more than that? And I'm going to just have to apologize to the Court. I'm not authorized to speak today to the issue of implied certification. This is an actual certification case. This is an express certification case. Right. And I simply don't have the authority to take a position on behalf of the government on that implied certification question. Okay. Maybe we should hear from the Relators Council then. Thank you, Your Honor. And thanks for keeping your voice up. Thank you. I heard every word you said. Good morning, Your Honors. Collette Matsey on behalf of Relator Jerry Frazier. I'd like to reserve three minutes, if possible. The district court erred here in dismissing with prejudice the complaint alleging a fraudulent scheme to induce the referral of Medicare beneficiaries as patients to IASIS's hospitals through an illegal kickback scheme, and also in dismissing with prejudice the allegations that the claims were medically unnecessary. The district court did not follow controlling 9B authority from the Ninth Circuit. The Ninth Circuit precedents, the most prominent case being the United States' X. Rel. Lee v. Smith-Kline case, have held that to satisfy Rule 9B, one must aver fraud with sufficient particularity to give the defendant notice of the particular misconduct with which they are alleged. And in the case of a False Claims Act, a case like this where we are alleging primarily that the claims themselves are false as a matter of law, the question, Judge Wallace, was whether they are legally false. That is, there are sufficient allegations to meet that. Just to review the complaint, each element of a False Claims Act claim is pled in the second amended complaint. And it is the circumstances of the fraud that must be pled with particularity. Here, the illegal referral relationships are pled between paragraphs 72 and 120 of the nature of the illegal referral relationships. In addition, we have also pled in approximately 19 paragraphs that referrals resulted to IASIS hospitals from the specific 24 physicians of Medicare-eligible patients. And that's detailed in over 19 paragraphs. And we have made the further allegation that claims were presented to the United States in 11 separate paragraphs. What we have not pled and what the district court erroneously held we must plead are the specific identities of the patients who were referred by these physicians and the claims that were submitted to Medicare. We have also pled this as an express false certification case, as this Court has noted, in 13 separate paragraphs. The district court's errors, in our view, are several. The first was inciting the Affletuni case and requiring that not the Affletuni case is the case that went out on summary judgment. And by requiring relators to plead, not simply what must be pled at a pleading stage in order to survive a Rule 12b-6, but what must be presented as evidence at a summary judgment stage or a trial that was inappropriate to cite to the Affletuni case. We do think that a claim has to be pled, submission of a claim, but that's different than what we would have to later prove at the summary judgment stage. In addition, the district court erred because even though the district court recognized that we could state a claim under the False Claims Act, that we had alleged both an illegal scheme, the existence of a quid pro quo, the referrals to the hospitals because of the illegal financial relationships and the submission of claims generally to Medicare for those patients, erred by adopting, not following this Court's precedents, but instead relying on two decisions from the Eleventh Circuit. And the Eleventh Circuit, the decisions are the Clausen decision, the Corsello decision, and the Eleventh Circuit really does have a different standard for pleading under the False Claims Act than the Ninth Circuit does. In addition, the district court erred by going on to give us a laundry list of additional details that would have to be pled in order to allege a false certification. So, and it showed a real fundamental misunderstanding of what this case was about. So, for example, the district court said that we had to plead not only that there had been a false certification on the cost reports for each year, even though we had explicitly stated what the false certification was, but that we also had to plead who signed each of those cost reports and the amounts on the cost reports that may have been overstated. As I said, this case is primarily one of legal falsities. So when Dr. Heuser, for example, one of the doctors named in the complaints, has entered into what we allege to be an illegal financial arrangement that violates both Stark and anti-kickback with IASIS, all of the referrals that he makes and all of the claims that are submitted as a result of that illegal relationship are themselves false as a matter of law. It is akin to the physician who has been defrocked or removed from their status or their privileges. I'm not sure if that is actually an express claim. In this case, we have pled express certification. I know, but then you also made some arguments on implied certification, correct? Well, how one, under Hendow, one needs to look at whether it is a condition of reimbursement. And Stark is quite explicit that no payment, Stark is a civil statute, no payment may be made for a claim that is submitted that violates the requirements of Stark and isn't protected by one of the state courts. Getting back to the express versus implied, your cost reports here each contain a certification that the administrator is familiar with the laws and regulations, et cetera, and that the services were provided in compliance with laws and regulations. So does that underlie all of the claims in your complaint that express certification? It does. And the question I have is if that's enough. I mean, that's basically takes you back to Hopper or the others where you can't just say, well, it's a violation of the law and therefore false claim. You know, that is a fairly broad kind of claim. And so linking it to something that requires a payment is where I'm having some problem in terms of the statutory scheme. Would you comment on that? Because if under your theory, then all somebody really would have to allege is that since you're you claim you have to be in accordance with the law and you submitted this certification, that indeed, that's the false certification, and therefore I have a complaint. That is correct. Analytically, that is correct. It is the same. And then what needs to be you still have to make, I think, a further allegation that claims are submitted, which we have. But for purposes of Rule 9b, the specificity and the circumstances of fraud go to that front-end transaction. And then the question of whether you need to specify who signed the cost report. Leaving aside the signing and the date. Okay. It's really more a question of how the statutory structure and whether these statutes are enough to really link the payment. Well, we would. Just by saying, well, you have to abide by all the laws. We would cite the Thompson decision from the Fifth Circuit, the Rogin decision from the Seventh Circuit, the McNutt decision from the Eleventh Circuit, all supporting the proposition that false certification of one's compliance, particularly in the Fifth Circuit, Thompson. False certification of one's compliance with Stark and anti-kickback is sufficient to support a claim of liability under the Fifth Circuit. I wanted to ask about the difference. That's a very specific compliance, though. I mean, it's a specific certification. Yes. Where is that certification here? How much of your case is dependent upon this, whether this is express or implied approach to it? Are you over in the implied area now? We don't need this Court to reach implied false certification to decide our case because of the express. Let me ask you a question about this. Why? Because why? Because the certification here is of compliance specifically with Stark and anti-kickback. I mean, and because That's actually the question that I had. Is the certification that there has been compliance with laws and regulations regarding the provision of health care services, or is the certification listing specific statutes and regulations? Do you understand my question? Yes, I do. I'd have to go back and again check, but my understanding is it's the first. Right. So then my question is, if the certification is of compliance with the laws and regulations regarding the provision of health care services, I understand why the Stark statute falls within that. Why would the anti-kickback statute fall within a law regarding the provision of health care services? How broad is that certification? It's specifically the health care anti-kickback, the Medicare anti-kickback statute. So it's purely the Medicare public health? Exactly. We're not talking about any other anti-kickback. Okay. And that's why Rogan from the Seventh Circuit is probably the most helpful in that. The implied false certification question, if we hadn't alleged a certification here, I suppose one could still reach that Stark itself by its terms. It's not really an implied false certification. It is simply then, as long as you allege that Stark forbids payment, it's a condition of reimbursement. Under the Hendal analysis, you have the same situation where there was no question. In Hendal, the compliance with the incentive compensation ban was a condition of payment of the subsequent claims. And looking analytically in terms of Rule 9B, there are two analogies in Hendal. One is to the facts in Hendal themselves. The circumstances of the fraud, the incentive compensation ban violations had to be pled with specificity, but there was no suggestion. I know Hendal doesn't reach 9B. No suggestion that the underlying claims, which on their face, the student loan claims, the Pell Grant claims, on their face don't tell you anything specifically about the fraud. And there's also an example in there of a bid rigging cases where the availments of fraud on the front end are what make the subsequent claims themselves neutral, innocent, make them legally false. So the analysis is quite important, and what's concerning about this district court's holding is that it goes beyond the question of whether we should have been allowed to amend to add the medically unnecessary claims, which we had asked the court for permission for leave to amend specifically on those. But it goes on to further hold that even where there's legal falsity, one has to provide all the specificity in claims, and we think that's error. You're almost out of time, and I know you wanted to save some for rebuttal. Thank you. I'll hear from Mr. Fee. May it please the Court. I appear this morning on behalf of IASIS Healthcare Corporation, the prevailing party below, and the cross-appellant before this Court on one issue today. IASIS Healthcare respectfully requests that this Court affirm the district court's holding that the complaint that was tendered against IASIS Healthcare, the third complaint created by this relator, failed to satisfy the particularity requirements set forth in this case. Now that you've mentioned the third claim, and as mentioned by the district court too, there's something that bothers me. Maybe you could clear it up right away, because I'm not sure how far we have to get into this case, and that is whether or not the district court committed error in not allowing a complaint to be amended. Now, you're right. There was a second amended complaint that was before us. But if I understand the record correctly, it's the second amended complaint, which is the first one that was tested by the adversary process, and the first one ruled in by the district judge. So this constant reference to the third doesn't seem to me to fit the case we have. It's really the first time that there's been anything challenged in the procedure. So why doesn't Rule 15 apply? Why didn't the district court commit error in failing to allow the one amendment, as we have again and again and again said the first time around, let's be liberal in letting them amend? Maybe you can answer that for me. Happy to, Your Honor. The district court below, unlike many of the cases that we have seen in the Ninth Circuit where this court endorses a liberal rule of repleting, the district court, unlike some of the judges in those cases, actually articulated his reasons why. He cited the latent factors, that is, the rule of this circuit, the five latent factors which govern whether or not leave to amend should be provided. And Your Honor is correct in mentioning error. In this case, in this Court's Allen v. Beverly Hills, City of Beverly Hills case, this Court must find a clear error of judgment by the district court below. Let me tell you why there was no clear error of judgment. Yes, the Court cited as an express reason, consistent with the latent factors and the law of this circuit, the fact that this is not the first complaint that the relator had amended before. But one has to put oneself in the position of the district court and look at what he had in front of him as he articulated no leave to amend under two additional latent factors, the first being futility. This relator, Your Honor, never, never offered to cure his complaint to conform it to the predominant law in the United States among the predominant number of circuits under the False Claims Act. Below in their opposition, they said, Relator is in a position to add detail about financial arrangements and unnecessary interventional cardiac procedures and open heart bypass surgeries. That's in the supplemental record at 74. In the argument below, in front of Judge Teelborg, Ms. Metzi said, if the Court felt amendment was required and we don't think so, we're ready to go. We're ready to proceed with discovery. That's in the record at 48 and 49. Never once did this relator articulate to the Court its willingness to even try to amend its complaint to conform with the law of the Ninth Circuit and the law that is the predominant interpretation of the False Claims Act around this country. Never once did they put a proposed complaint in front of this Court so that he could see it and look at the types of details that they might add. Why? Because they simply said, as they say in their briefs to this Court, Judge Teelborg was wrong. We are right. Kagan. Kagan. Kagan.                        You wait and see what the government is going to do. And, you know, it's a subterranean litigation at that point. It doesn't involve you. It doesn't, Your Honor. Okay. So why am I having some trouble? Because the age of this case as an adversary proceeding isn't that old. And then they say the two prior amendments. But again, those were in effect self-amendments, correct? Self-amendments, Your Honor, by their own admission, working with the United States during a period of investigation. That's how it worked. Where they had access to information. And further, as we state in our cross-appeal, Your Honor, amendments that were done to a complaint, which we know and we assert in our papers on our cross-appeal regarding the breach of the attorney-client privilege, was based on over at least over a thousand privileged documents that were stolen by this relator when he left the employment of IASIS Healthcare. So the position that the relator was in, Your Honor, when he put together his third complaint, while they are self-amendments, they were based upon a treasure trove of information, much of which he was not entitled to have, and upon the information that he was able to glean through his cooperation with the United States for over two years of their investigation, an investigation which has led to nothing, by the way. But at that point, you don't really have a court that says, you know what, you're missing the link to the Medicare payment or you're missing this. I mean, that's like everybody who sits in their office or with somebody else and tries to draft the best complaint they can, and then you come to court and somehow the judge doesn't think that you matched all the requirements. And that's at that point, then you should be able to amend. Sure. Not everyone who sits in their office, though, Your Honor, is a self-relator himself, is a self-proclaimed QI-TAM lawyer. Not every relator has been represented by the premier QI-TAM law firm in the United States. So let me get you up. I want to go back to the question of what must be pleaded in detail. And I want to leave aside the question of medically unnecessary procedures because that is an area in which the relator has offered to plead with greater particularity what examples of procedures that were not medically necessary and why. But with respect to the remainder of the complaint, why is it not sufficiently pleaded in terms of describing the nature of the alleged fraud and the tie-in of that alleged fraud to the payment of claims? You're talking about the claims which the relator now is basing on false certification. Correct. That class of claims. Certainly. They are deficient for a number of reasons. And Judge Teelborg, in the district court below, articulated those reasons. He did not, as has been stated in the briefing and has been stated before this Court, rest his decision on the identification. Counsel, we have de novo review of whether this pleading is sufficient. It would help me if you don't argue with Judge Teelborg or support Judge Teelborg. I just want to know what is, in your view, had to be pleaded with respect, say, to the Stark statute. Certainly. It wasn't. Yes. And I'm just, I say I agree with Judge Teelborg, and I will articulate my basis for you, Your Honor, right now, consistent with Iqbal and the pleading guidance that we have received from the Supreme Court. First, there must be a pleading of a Medicare referral. In a false certification case, they have alleged that two statutes are in play, Stark and the Medicare Any Kickback statute. Both of those statutes are premised on Medicare and Medicaid. So we need Medicare referrals. There has to be not a conclusory allegation, not a conclusory pleading, but a factual pleading that Medicare is in play and that these statutes are triggered. Second, in conformance with particularity that is required under this circuit's well-established precedent of 9b, the underlying statutory offenses must be pled with particularity. We, by no means, Your Honor, concede that that was done in the district court below. It was not. The underlying offenses of Stark, which is a, as was referenced by my, by opposing counsel, a civil statute, and the Medicare and Medicaid Anti-Kickback statute, which is a criminal statute, a criminal statute. Each of those statutes have elements. That has to be pled with particularity. Third, there has to now, we have to translate this into a claim, because Hopper v. Anton, Affletooney v. Kitsap all teaches us that we need in this circuit under the False Claims Act a claim. So they must link these statutory violations to a claim. And those claims should be identified, not by patient name. Now, Judge Teelborg never said that, nor do we before this Court. We simply ask that representative examples of claims be identified with specificity so that this defendant can marshal a defense precisely to the claim. I want to ask you about that last point. The other ones I followed completely, but if they're not. I wasn't through, Your Honor, but I will. No, no, I know. But with respect to the one you just named, that there have to be representative claims identified, if the remainder of the allegations would demonstrate that all claims of this claimant are false, why would you need representative ones listed? Because this is an action brought under the False Claims Act. This is not a private right of action under the Annie Kickback statute or the Stark statute. There is no private right of action under those statutes. There is no presumptive right for individuals to vindicate those statutes. The government has that obligation. The False Claims Act requires that some claimant. What does that have to do with specificity? If all the other allegations are extremely specific, demonstrating all the underlying that, as you put it, the underlying statutory offenses and all the elements of them, if the result of that is to demonstrate that all claims would be false, why would you have to list any claim in particular? Because the False Claims Act requires it. Because in order to avail oneself of the remedies associated with the False Claims Act, as opposed to a private right of action under those statutes, and the remedies can be very rich for relators, they must conform their case to the False Claims Act. The False Claims Act requires the identification of a claim, at least some representative examples, in order to have a referral, in order to have an offense or an ineligible referral for Medicare under Stark, there has to be a Medicare patient that was referred. Stark applies to Medicare payment. Right. Okay. So going back to your list, you have to have the Medicare referrals, the underlying statutory offenses and their elements, specified claims. And what are the other items? Well, the last element, Your Honor, which in this theory, which was the Court's question, which is in the express false certification context, here, here, we must look at then what was the false certification. And that must be pled with particularity. Here we have allegations that are made against 24 physicians in 10 hospitals. The precedent that exists around this area, it's difficult to find any case that has such breadth in terms of its scope. These are in five different states in the western United States where the relator has set his sights. So he has pled this broad scheme and said everybody falsely certified. Well, that's not sufficient. He must plead facts relating to the certification. The certification becomes the focus here, the false claim. Judge Teelborg was criticized by the relator for being myopic in that regard. He was not. He was focused correctly on the false certification. Could I ask you about the certification? If the certification encompasses compliance with the health care laws, which include, you know, Stark and the anti-kickback, if you then allege something that would be a violation of Stark or the anti-kickback, would that then be enough pleading? I would still, Your Honor, say that there must be an identification of claims that fall within the scope of the prohibitions of the statutes. So, for example, but so you're not attacking that the broad nature, you know, the umbrella claims that come with the certification, you're not saying that that in itself is, would basically undermine their claim. It's the lack of the predicate allegations? Yes. It's the lack of the identification of claims that would have been prohibited under the Stark statute that are false. And the relators themselves point out in their brief, you know, we speak of a cost report as if it's this master claim. It is not. It's a document that, while it has status as a claim under Bourseau in this circuit, nevertheless, the relators themselves point out it is the individualized, particularized patient services that they say are the false claims within the cost report. So identification of at least some representative samples that ineligible patient services were supplied and passed through to Medicare would be required, Your Honor. Well, you know, going back to the amendment then, some of what was suggested to be deficient here really relates to linking up the claim with a Medicare payment, you know, like you're missing that one link. Why wouldn't it be appropriate to give them, having identified some of these deficiencies, an opportunity to see if those could be cured? Maybe they can, maybe they can't. Maybe you'll be back where you are, where, you know, you don't really know, your being alleged as to which doctors. But if you could link that up with a certain amount of specificity, then the cost report would, in effect, suffice as the claim, correct? Well, Your Honor, this brings us actually to some of the additional reasons why it's not appropriate to amend, which I would like to address the cross-appeal, and I see my yellow light is on, and that is that another reason not to allow this relator to amend is, are the facts set forth in our submission on our cross-appeal in which we established that this relator and his counsel had access to undeniably attorney-client-privileged materials, and in the materials we have submitted in support of the motion to surrender documents and for further relief and on our cross-appeal, have admitted reviewing these in connection with the preparation of the complaint. We would submit, Your Honor, that yet another reason to not allow amendment in this under these circumstances is bad faith. One of the latent factors that is set forth in Western Shoshone and has been articulated by this Court, and that is another factor why we would say that this relator should not be able to amend. That was not Judge Teelborg's reasoning, though. It was not. But for abuse of discretion, one of the three bases he used was futility of the amendment, and I think that's what Judge McEwen was asking you about. And if we give a road map, you know, why wouldn't there be that opportunity that might or might not be futile? Well, that's because the relator has admitted before the district court that does not possess the information that could take the unnecessary services claims and turn them into appropriate claims under the False Claims Act. The relator has given Judge Teelborg no indication that he could ever do that. And Judge Teelborg also mentioned that in the absence of any action by the United States, which has never taken place, that it's highly unlikely that this relator, albeit a consummate insider as he represents himself to be, could ever have that information about what particular services. If we think about the unnecessary services claims, they are the most deficient in this complaint that is full of several deficient theories. But they are the most deficient and they are almost indistinguishable from the types of allegations one could make by walking into a hospital and reading off the list of cardiologists and saying they send unnecessary medical services to the government. There is nothing in the complaint that would indicate that there is specificity. There is nothing that has been offered, even in the briefs to this Court, that would indicate that they have the information necessary to satisfy the False Claims Act standard as articulated by the majority of circuits in this country, the Eighth, the First, the Sixth, the Eleventh. I would like to turn, if I could, Your Honor, because my time is expiring, to our cross-appeal. On our cross-appeal, IASIS Healthcare respectfully asked this Court to reverse and remand to the District Court Judge Tilburg's holding that our motion for surrender of documents for in-camera review and further relief was moot. IASIS submits that under the under-established precedents, starting with Cooter v. Jell and in this circuit with retail flooring and the Lund case, that the Court is not deprived of jurisdiction to address a very important issue for IASIS Healthcare simply because the case has been dismissed. The Court retains jurisdiction under that authority to deal with issues of sanctions and other remedies relating to matters that occurred in the principal case. In this case, we have submitted and vigorously tried to protect the attorney-client privilege that attaches to the documents that this relator purloined from his former employer, handed over to his lawyers, and his lawyers then reviewed. To this day, we have no assurance that IASIS Healthcare's privileged information has all been returned to the company. This issue came to light only because the United States of America contacted IASIS Healthcare and sought to subpoena three specific documents. When they were informed that those documents were already on a privilege log that was submitted in connection with an investigative subpoena related to this case, the United States then returned those documents. The bottom line is that you're asking us to rule that the issue was not moot at the conclusion of the district court's order. Yes, Your Honor. And that's the only issue on appeal, correct? The issue on appeal is that it's not moot and that it be remanded to the district court for further relief as requested by IASIS Healthcare. I see my time has expired. Thank you. Thank you very much, counsel. We will give you two minutes for rebuttal. As this court has recognized, we did request leave to amend in the district court that IASIS has never argued that we cannot state a claim under the False Claims Act for violation of anti-kickback and Stark, so the district court's conclusion of futility, which is really a question of legal futility, is inappropriate, is incorrect. There should be no further specificity required for the false certifications themselves for two reasons. First, the False Claims Act recognizes that IASIS is responsible for those certifications, both because there's causing to be submitted false certifications liability under the False Claims Act, and because they are responsible for what occurs within their company. There's a concept of respondeat superior within the False Claims Act. The real question in this case is whether patient-specific claims have to be identified in a Stark or anti-kickback case, and we think the answer is no. We commend you. Can I ask you, I'm not sure if I heard correctly, but I thought counsel said with respect to the medically unnecessary aspect that you had indicated you couldn't provide further specificity. Right. And I may have misheard that, but what is your position on that? He did say that that is incorrect. We can provide specific examples of unnecessary surgeries in Arizona and Texas in particular. Okay. And on the cross-appeal, our position is that it should be dismissed. The district court held that it was moot because he had dismissed on 9B grounds. In this case, the motion before the court was a motion to surrender documents. That was IASIS's motion. All of those documents have been surrendered. We, you know, reject the accusation that we somehow reviewed a true claim. So let me just be sure I understand your position on the cross-appeal. Your contention is that it's moot not because the underlying litigation ended, but it's moot because the documents were, in fact, surrendered. That's correct. And they styled their motion as a motion to surrender. If you look at Docket 80, it is not styled as a motion. No, I'm not asking how it's styled. Right. Did they ask for sanctions? They include a reference to attorney's fees in one of the last paragraphs of their remedies. So why would that be moot? Why would that be moot? In other words, you know, we don't really. I agree under Cooter if it's a sanction. It's like saying you don't look at the title of a statute. You don't look at exactly how it's styled. You look at the guts of the pleading. We think the district court should be allowed to make a determination on mootness in the first instance. So if this court, rather than reversing the mootness determination, instead dismisses the appeal and allows the district court to decide whether it was moot on an alternate ground because the documents had been surrendered and that's really what they were seeking, that would be appropriate. Most of their discussion on appeal has to do with three audit documents that were later put a motion in front of the district court to find that those were not privileged, and the United States agrees with us on those. So that's most of what they say is a fact. Kagan. Let me ask you one more question having to do with specificity, and this is brought to mind by your comment that there are specifics known to your client that could be put in the pleadings with respect to two of the five States in which IASIS operates. What is the right outcome for a complaint that is sufficiently specific in part and not specific enough in part? Is it to carve out the specifics or require you to do so and go forward with that? Or what is your position on that? Our position would be that we could go forward under the Supreme Court's decision in Rotella v. Wood. Rule 9b has to be read in conjunction with 11b-3. And to the extent we've made allegations that the complaint, that support the complaint itself, and we have some allegations that one can reasonably anticipate with additional discovery we'll be able to meet the standard that would be required at the summary judgment stage or later, we believe we can go forward. On all of it, in your view? Yes. However, here we have said that on the medically unnecessary claims portion, we pled that it is consistent with what we understood the Ninth Circuit standard to be. The Ninth Circuit has said you don't have to identify specific transactions, both in Lee and in Cooper. However, if it is felt that that is appropriate for those claims, we can provide that specificity at this point. Okay. Thank you. The case just argued is submitted, and we appreciate very much the arguments of all counsel. We'll take about a ten-minute break in our docket. Thank you.
judges: Wallace, Graber, McKeown